IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal: 3:14-CR-00046-CAR |
| ERICKSON MEKO CAMPBELL, | |
| Defendant. | |

### ERICKSON MEKO CAMPBELL'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE AND BRIEF IN SUPPORT

COMES NOW, Erickson Meko Campbell (Campbell), and moves Court to suppress all evidence seized as a result of Deputy McCannon's (McCannon) December 12, 2013, traffic stop of Campbell's car. McCannon illegally stopped and detained Campbell without probable cause that a traffic violation had occurred nor reasonable suspicion that criminal activity was afoot. McCannon then prolonged the traffic stop beyond that which was necessary to effectuate its purpose. Thus, McCannon violated the Fourth Amendment to the United States Constitution and any consent Campbell gave to a search of his vehicle was tainted. Any evidence seized as a result of those violations should be suppressed.

### I.   FACTUAL BACKGROUND[1]

On December 12, 2013, McCannon saw a grey Nissan cross over a fog line. He began following the Nissan and activated the camera[2] in his cruiser. McCannon then witnessed the Nissan change lanes a couple of times and cross over the fog line a second time. The cruiser's camera

---

[1] Pursuant to Local Rule 47.5, Mr. Campbell expressly requests an evidentiary hearing.  This motion relies on the factual assertions provided by the Government in the discovery it has produced to date.  This motion's reliance on those facts should not be construed to indicate agreement with those facts.  Mr. Campbell explicitly reserves the right to challenge those factual assertions at an evidentiary hearing or trial.
[2] The government provided a copy of the dash cam video in discovery.

recorded the Nissan changing lanes and using its turn signal to signal its intention to do so. However, McCannon believed the Nissan's left turn signal was not functioning properly "because the signal blinked very rapidly." The video from McCannon's camera does not show the Nissan cross the fog line, nor does it show the Nissan weave in its lane of travel, drive riskily, or in a manner suggesting that the driver was impaired.

McCannon decided to call dispatch and run the Nissan's tag – "to make sure it was not stolen." Dispatch told McCannon that the Nissan was not stolen, there were no warrants associated with it, and it was registered to Erickson Meko Campbell out of McDonough, Georgia. McCannon decided to stop the Nissan for failing to maintain its lane[3] and what he believed was a malfunctioning turn signal.[4] McCannon stopped the Nissan four and a half (4.5) miles from where he first saw it cross over the fog line.

The Nissan immediately pulled over. McCannon went to the passenger side of the vehicle and made contact with the driver, Campbell. Campbell provided McCannon with his Georgia Driver's License. McCannon did not smell the odor of "any alcoholic beverages coming from inside the vehicle that would lead him to believe that [Mr.] Campbell was drinking and driving." McCannon had Campbell step out of the Nissan and accompany him to his cruiser. McCannon told Campbell he was going to issue him warnings for the violations he observed.

McCannon then began to interrogate Campbell about matters unrelated to the traffic stop. He repeatedly asked Campbell about his travel plans, his knowledge of Augusta, where he worked, if he had time off work, how old his car was, what kind of deal he received on his car, whether he had contraband in the car (including drugs, guns counterfeit merchandise, and dead bodies), and his traffic and criminal history. Part way through the interrogation, McCannon "had to stop and

---

[3] Ga. Code Ann. § 40-6-48.
[4] Ga. Code Ann. § 40-8-26.

get his coat from the patrol car." McCannon left Campbell at the front of his cruiser and went to retrieve his jacket from inside the vehicle. McCannon then went back to Campbell and continued to interrogate him. McCannon asked Campbell several questions multiple times and required Campbell to explain his answers to another officer who arrived on the scene.

McCannon then asked Campbell if he "would submit to a search his car." Campbell replied "yeah." During the search of Campbell's car, McCannon found a "black and grey Michael Jordan bag," searched it, and found "a black in color semi-automatic pistol." Campbell was arrested.

## II. DEPUTY MCCANNON ILLEGALLY STOPPED AND DETAINED MR. CAMPBELL

The Fourth Amendment protects persons from unreasonable search and seizure. U.S. Const. amend. IV.; see also United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003); United States v. Purcell, 236 F.3d 1274, 127 (11th Cir. 2001). In the context of a traffic stop, an officer's detention must be justified by either probable cause to believe a traffic violation has occurred under Whren v. United States, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996), or reasonable suspicion of criminal activity under Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). E.g. Chanthasouxat, 342 F.3d at 1275. Further, law enforcement's actions must have been reasonable under the totality of the circumstances. Id.

The permissible scope of a detention for a traffic offense is limited. United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003); United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003) (citing United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001)); United States v. Pruitt, 174 F.3d 1215, 1221 (11th Cir. 1999); United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990).

> [A]n officer's investigation of a traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place. In addition, the traffic stop must be of a limited duration. The stop may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity.

Boyce, 351 F.3d at 1106 (citation and punctuation omitted). Accordingly, during a traffic stop, law enforcement may: (1) investigate the driver's license, (2) investigate the vehicle registration, (3) check for insurance, (4) and wait for the results of a criminal history check. See e.g. id. Law enforcement may not go beyond these bounds without "articulable suspicion of other illegal activity." Id.; Perkins, 348 F.3d at 970 (citing Purcell, 236 F.3d at 1277); Pruitt, 174 F.3d at 1221; Tapia, 912 F.2d at 1370.

Without additional reasonable suspicion of criminal activity separate and distinct from the basis for the traffic stop, prolongation of the detention violates the Fourth Amendment and any evidence seized as a result must be suppressed. Perkins, 348 F.3d at 971; Pruitt, 174 F.3d at 1221; Tapia, 912 F.2d at 1370; see also Chanthasouxat, 342 F.3d at 1280 (citing Wong Sun v. United States, 371 U.S. 471, 484–85, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)). Any consent obtained via exploitation of a Fourth Amendment violation is tainted and ineffective to justify a subsequent search. E.g. Florida v. Royer, 460 U.S. 491, 507-08, 103 S. Ct. 1319, 1329, 75 L. Ed. 2d 229 (1983).

**A.      Deputy McCannon violated the Fourth Amendment when he stopped Mr. Campbell without probable cause to believe Mr. Campbell violated a traffic law or reasonable suspicion of that he was involved in criminal activity.**

McCannon stopped the Nissan for having a malfunctioning turn signal and failing to maintain its lane. See Section I., above. But, the evidence demonstrates that Mr. Campbell's left turn signal functioned as required by law. Georgia law makes clear, in pertinent part:

> Any motor vehicle … when required under this article shall be equipped with the following signal lights or devices: A light or lights or mechanical signal device capable of clearly indicating any intention to turn either to the right or to the left and which shall be visible from both the front and the rear… and every signal light or lights indicating intention to turn shall be visible and understandable during daytime and nighttime from a distance of 300 feet from both the front and the rear. When a vehicle is equipped with a brake light or other signal lights, such light or

> lights shall at all times be maintained in good working condition. No brake light or signal light shall project a glaring or dazzling light.

§ 40-8-26; see also Section I, above. Campbell's left turn signal functioned as required by the statute because it clearly indicated his intention to change lanes and was visible from both the front and rear of his car for a distance of at least 300 feet. See Section I., above. Thus, McCannon stopped Campbell without probable cause or reasonable suspicion to believe that he had violated 40-8-26.

And, the evidence also shows that McCannon did not witness anything to justify stopping Campbell for failing to maintain his lane. First, the video from McCannon's cruiser does not support his claim that Campbell crossed the fog line. Second, even if it did, § 40-8-48 provides, in pertinent part:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this Code section, shall apply: A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety...

§ 40-8-26. Thus, merely touching a lane line (including a fog line) does not, by itself, justify a traffic stop for failing to maintain one's lane. See Acree v. State, 737 S.E.2d 103, 105 (Ga. Ct. App. 2013); Polk v. State, 700 S.E.2d 839, 841 (Ga. Ct. App. 2010); Semich v. State, 506 S.E.2d 216, 218–19 (Ga. Ct. App. 1998); Allenbrand v. State, 458 S.E.2d 382, 383 (Ga. Ct. App. 1995); see also United States v. Hernandez, 17 F.Supp.3d 1255, 1258 (N.D. Ga. 2014); United States v. Bryson, No. 1:13-CR-09-ODE-GGB, 2013 WL 5739055, at *4 (N.D. Ga. Oct. 21, 2013)). Moreover, the fact that merely touching a lane line does not, by itself, justify a traffic stop for failing to maintain one's lane is confirmed by the language of the statute itself: there is no violation if the "movement can be made with safety," and the lane needn't be pristinely maintained, but only

followed "as nearly as practicable." § 40–6–48(1). Thus, McCannon's traffic stop cannot be justified by "probable cause or reasonable suspicion due to [Mr. Campbell]'s driving conduct."

Further, even assuming arguendo McCannon observed specific facts sufficient to give rise to a reasonable suspicion of unsafe driving to justify a traffic stop under § 40–6–48, McCannon detained Campbell beyond that which was necessary and lawful to investigate that reasonable suspicion. Once law enforcement initiates a traffic stop, they must "pursue a method of investigation that [is] likely to confirm or dispel [that] suspicion[] quickly, and with a minimum of interference." E.g. United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1988); see also Royer, 460 U.S. at 498, 103 S. Ct. at 1324; United States v. Acosta, 363 F.3d 1141, 1146 (11th Cir. 2004).

Here, McCannon continued to detain Campbell after dispelling any suspicion of criminal activity. After stopping Campbell, McCannon immediately determined that he was not driving unsafely or while impaired. Absent reasonable suspicion that Campbell was driving unsafely, McCannon was required to release him. See Boyce, 351 F.3d at 1106; Perkins, 348 F.3d at 970; Purcell, 236 F.3d at 1277; Pruitt, 174 F.3d at 1221; Tapia, 912 F.2d at 1370. Instead, McCannon continued to detain Campbell to issue warning tickets for non-existent traffic violations. The continued detention violated the Fourth Amendment because it was not based on reasonable suspicion of criminal activity. See Boyce, 351 F.3d at 1106; Perkins, 348 F.3d at 970; Purcell, 236 F.3d at 1277; Pruitt, 174 F.3d at 1221; Tapia, 912 F.2d at 1370.

McCannon violated the Fourth Amendment when he initiated a traffic stop of Mr. Campbell's vehicle and continued to detain Campbell after dispelling any reasonable suspicion of criminal activity. Any consent obtained is tainted and cannot be used to justify the subsequent search. Royer, 460 U.S. at 498, 103 S. Ct. at 1324. This Court should suppress all evidence obtained as a result of that traffic stop. E.g. id.

**B.     Deputy McCannon violated the Fourth Amendment when he detained Mr. Campbell beyond what was necessary to issue the warning citations and searched beyond the scope of the consent provided by Mr. Campbell.**

"Law enforcement must pursue a method of investigation likely to confirm or dispel his suspicions quickly." United States v. Fields, 178 F. App'x 890, 894 (11th Cir. 2006); see also United States v. Sharpe, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575, 84 L. Ed. 2d 605 (1985) ("Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop."); Royer, 460 U.S. at 498, 103 S. Ct. at 1324; United States v. Brignoni–Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Acosta, 363 F.3d at 1146; Hardy, 855 F.2d at 759. Outside of performing those tasks associated with issuing a traffic citation, a traffic stop cannot be used as the basis of performing a "full search" or to subject "a suspect to custodial interrogation that would ordinarily require formal arrest and Miranda warnings." Hardy, 855 F.2d at 759 (citation and omitted).

Assuming for the sake of argument that McCannon justifiably stopped Campbell, he illegally prolonged the duration and broadened the scope of his traffic stop by launching into a fishing expedition for criminal activity unrelated to the traffic violations, absent any reasonable suspicion that such activity was afoot. McCannon failed to "pursue a method of investigation likely to confirm or dispel his suspicions quickly." Instead, he spent a significant period of time interrogating Campbell, often repeating several questions, regarding matters unrelated to the traffic violation or the purpose of the traffic stop. McCannon asked many of these questions several times. The number and scope of the questions asked were entirely unrelated to the ostensible justification for the stop, and asking those unrelated questions multiple times prolonged the duration of Campbell's detention and violated the Fourth Amendment. As a result, any consent is tainted and

cannot be used to justify a subsequent search. E.g. Royer, 460 U.S. at 498, 103 S. Ct. at 1324. Any evidence obtained as a result of that search must be suppressed. E.g. id.

Further, even if the consent to search were valid, McCannon's rummaging through Campbell's trunk and subsequent search of the "black and grey Michael Jordan bag" exceeded the scope of any consent provided by Campbell. E.g. Florida v. Jimeno, 500 U.S. 248, 252, 111 S. Ct. 1801, 1804, 114 L. Ed. 2d 297 (1991). As a result, any evidence obtained as a result of that search must be suppressed. E.g. Royer, 460 U.S. at 498, 103 S. Ct. at 1324.

Respectfully submitted, this 12th day of March, 2015.

S/ *Christina L. Hunt*
CHRISTINA L. HUNT
Ga. Bar No.: 378501

s/ *Jared Scott Westbroek*
JARED SCOTT WESTBROEK
Ga. Bar No.: 198008

Federal Defenders of the
Middle District of Georgia, Inc.
440 Martin Luther King, Jr. Blvd.
Suite 400
Macon, Georgia 31201
Tel:  (478) 743-4747
Fax: (478) 207-3419

## **CERTIFICATE OF SERVICE**

I, Christina L. Hunt, hereby certify that on March 12, 2015, I electronically filed "***ERICKSON MEKO CAMPBELL'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE AND BRIEF IN SUPPORT THEREOF***" with the clerk of Court using the CM/ECF system which will send notification of such to all counsel of record.

Respectfully submitted, this 12th day of March, 2015.

                                        S/ *Christina L. Hunt*
                                        CHRISTINA L. HUNT
                                        Ga. Bar No. 378501

                                        Federal Defenders of the
                                        Middle District of Georgia, Inc.
                                        440 Martin Luther King, Jr. Blvd.
                                        Suite 400
                                        Macon, Georgia 31201
                                        Tel:  (478) 743-4747
                                        Fax: (478) 207-3419